Good morning everyone. It's a beautiful day in San Francisco. Before we begin argument, Judge Fernandes and I would like to acknowledge and thank Judge Cho Groves from the Court of International Trade in New York. She's sitting with us on assignment for a few days and we're very appreciative and happy to be here. Great. So our first case on the calendar is Williams v. Gentry and that's been submitted on the briefs. And the first case up for argument is United States v. Iris Rodriguez. Good morning. May it please the Court, Rosalyn O'Gara for the United States. I would like to reserve two minutes for rebuttal. The district court applied the incorrect legal standard in this case to a factual record that indisputably reflected that the defendant validly consented to the pat-down search of her body. That decision was an error. This court should overturn the district court's order and find that the defendant's consent was voluntary. The district court wrongly decided that the consent in this case was involuntary. The magistrate, the fact finder in this case, made clear comprehensive factual findings. Those are factual findings made by the magistrate in the last paragraph of his R&R. On those factual findings, the district court's determination that the defendant's consent was involuntary was clear error. The district court applied the wrong legal analysis in coming to this determination and did not adopt the factual findings and credibility determinations of the magistrate, despite the ---- So the district judge in footnote 2 of the order, you know, he says he takes the facts and he acknowledges what his obligation is when he's reviewing, when the Court's reviewing an R&R. Yes. What do we do with that? Well, the rejection of the factual findings and credibility determinations of the magistrate need not be explicit to be an error, and this Court found that to be the case in United States v. Hernandez-Acuna. The examination of the examples that the government cited in its brief of the two instances where it is clear that the district court is in fact rejecting those factual findings and credibility determinations clearly demonstrate that that rejection, although it was implicit, did occur. When I looked at this, what struck me is it seemed like what the district court judge did was he adopted the essential facts of the magistrate judge and then looked at similar case law and came to a different conclusion. I don't understand why that's wrong. Well, Your Honor, I respectfully disagree that that is what the district court did in this case. Although the district court did state that it was adopting the factual findings and credibility determinations, there are two instances where the district court clearly did not do that. The first was the finding by the district court that there was not a second consent or multiple consents in this case. The district court relied on that in order to distinguish this case from Preciado-Roglez. But in fact the magistrate specifically find that there was a second consent. No. What the magistrate did was it credited the testimony of Agent Salcedo. Specifically, the magistrate said that the testimony of Agent Salcedo leading up to and including the search of the defendant was credible. Agent Salcedo specifically testified that she informed the defendant when they had entered the privacy shed that she was going to begin the concern — I'm sorry, she was going to begin the search. And the defendant replied, yes, okay. And then Agent Salcedo testified she consented. So although the magistrate didn't say this was a second consent, the magistrate did credit that specific testimony and that statement by Agent Salcedo. In that footnote that Judge Payaz referenced by the district court, the district court decided that it would not credit that testimony. It specifically says Agent Salcedo called this a second — this a second consent. Agent Salcedo actually testified. The defendant consented at this point. But the district court rejects that wholeheartedly. And that is a rejection of a factual finding and a credibility determination as to the credibility of Agent Salcedo by the district court. And that was an error, because the district court cannot do that without either a — without a de novo evidentiary hearing in this case. But I want to turn back to the first issue, which is that — the first issue that I'm — that I wanted to discuss, which is that the district court, in addition to rejecting the factual findings and credibility determinations of the magistrate in this case, also committed a legal error in its voluntariness analysis. The district — as this Court is aware, voluntary — the voluntariness analysis is a totality analysis. But there are five factors that the United — that the Court in United States v. Castillo instructed should guide that analysis. The first of those factors is whether or not the defendant, when she gave consent, was in custody. The four subsequent factors include whether there were guns drawn, whether Miranda warnings were given, whether the defendant was told she had a right not to consent, and whether she was told a search warrant could be obtained. In this case, the district court improperly equated that first factor of whether the defendant was in custody with seizure. And that is a problem, because those — seizure and custody are legally distinct concepts. And this Court has held in multiple cases that a stop at a checkpoint for a routine immigration inspection, even a stop that involves a referral to secondary inspection, is a seizure for purposes of a Fourth Amendment analysis. It does not amount to custody absent additional facts that demonstrate that the defendant — Robertson, you don't dispute that she was seized, do you? I do not dispute that. Right. Right. No, I think the case law and the facts in this case are clear that she was seized. But again, that is not — that is not the factor that the Court is to analyze in determining whether or not her consent was voluntary. Well, here was — not only was she seized, but she was routed to a shed? Is that what it was for the — for the search? She was escorted to a privacy shed, because as Agent Salcedo testified to during the hearing, they don't conduct back-down searches on the side of the highway. Yes. But there were no facts found by the magistrate that would indicate that that — that the circumstances of her — first of all, her consent was — She wasn't free to leave or anything like that, was she? No, she was not. She was seized. She was under their — under their control. Yes, Your Honor, she was. But there were no additional facts found by the magistrate that would indicate that that seizure rose above or beyond a seizure to the level of a formal arrest. So you don't think that's — you don't think that's an important factor in the analysis? Whether or not she was seized? Yeah. So that is not a — that's not a factor that is articulated in the analysis. Well, we've looked at it. We've — I think it was Russell. Is that — is that the case I'm thinking of? It is absolutely a fact that the Court can and should consider in analyzing. It's a totality analysis. So all the facts surrounding her consent are certainly relevant to that. But the error here was not that the Court considered that she was seized. The error was that the Court equated seizure with custody for purposes of that analysis. And that was a problem. In what way? In what sense did the Court do that? Well, the — so the five-factor analysis, the first factor is whether or not the defendant was in custody. And in going through those five factors, the Court said the defendant was seized, and therefore that factor weighs against voluntariness. Those are not the same thing. But in addition, that error was compounded at the — in the third factor of the analysis, which is whether or not the defendant was read her Miranda rights prior to giving consent. There is ample case law out of this circuit that says that when a defendant is not in custody, the reading of Miranda rights is not required. And in the context of a voluntariness analysis, that factor carries little to no weight in determining whether or not that consent was voluntary. But the cases also seem to recognize that it's still a factor that can be recognized when there's been a seizure. It can. But again, it shouldn't weigh against a finding of voluntariness in that situation where the defendant was not in custody. And the facts surrounding the detention of the defendant in this case I think also are very relevant to this analysis, because the testimony by Agent Salcedo, which was explicitly credited by the magistrate court in this case, indicated that her interaction with the defendant prior to the defendant consenting to the search lasted approximately 15 seconds. The entire interaction, during which time the magistrate found the defendant never revoked that consent, lasted just a couple of minutes. This was not a prolonged search. There were never any handcuffs on the defendant. She was never threatened with the use of a weapon. She was never told that she was never – there were no facts found by the magistrate that would indicate that her detention rose to the level of custody. And so therefore, those two factors that the district court found weighed against a finding of voluntariness should have weighed on the other side of the scale. I have one minute left, Your Honors. I'd like to reserve my time. That's fine. Thank you. May it please the Court, I'm Philip Kimball. I represent Iris Rodriguez. I'd like to first address the question of whether or not Ms. Rodriguez freely and voluntarily consented to a search. As the government has indicated, the question of whether or not there is consent in this district is largely governed by the five factors set out in Patian-Soriano, although those are not certainly exhaustive. And of course, it is the government's burden to prove that consent was freely and voluntarily given. And as the government has indicated, the first factor has received the greatest amount of attention, and I think appropriately, that being whether Ms. Rodriguez was in custody. The two cases in this district that I think most directly address that are Preciado-Robles, as the government has referenced, and Ortiz-Flores. And Preciado-Robles is what I would characterize as the more typical type of checkpoint case, an individual drives up in his own vehicle, is asked some immigration questions. That arouses further inquiry, and as a result of that, a request to search is made several times, and a search is conducted. That is a seizure, and that's distinguished normally from custody, which is a more heightened level of restraint. And that's what happened in Ortiz-Flores and what happened here, both of which of course involved individuals on a shuttle bus who were removed from the shuttle bus. And in Ortiz-Flores, the court seemed to use the term seized and in custody to mean essentially the same thing, but I think that's understandable given that the nature of the detention in Ortiz-Flores was substantially different. And I think to understand fully why what happened here does constitute custody and negates voluntariness, it's important to look at the totality of the circumstances, as we are directed to do by Patia Soriano. Ms. Rodriguez is a native-born U.S. citizen traveling entirely within the United States when on this shuttle bus, she comes to this checkpoint. She is removed from the shuttle bus and is questioned about her immigration status. All passengers are removed, though. Yes, Your Honor. And although she is, of course, not required to have identification as she's traveled entirely within the United States, she's able to produce a valid current driver's license and a valid current passport card, the gold standard in immigration documentation. She's told, these aren't good enough. This isn't you. So here she is, removed from the shuttle bus in the Arizona desert, either not permitted to get back on and travel on her way, or she is in a position of having to inconvenience the entire dozen approximately people on the bus until she can satisfy immigration officials who are holding her identification documents. As a background, what we also are facing is, or what she is facing, is a situation in which this is far beyond an immigration check. The agent at the suppression hearing stated that she almost immediately thought that this individual might have been involved in criminal activity and, just based on her demeanor, before any search or request for a search, thought she might be smuggling drugs. So under these circumstances, she's asked to consent to a search, knowing that if she doesn't satisfy the immigration officials, she's either stranded in the Arizona desert or she's inconveniencing the whole bus. The court, the district court, correctly concluded that this is not a voluntary consent. Now, as to the first factor, was she in custody, the government, in its briefing, references California versus Baylor, I apologize, I don't know the pronunciation. There's interesting language in that opinion that states that the defendant is in custody if there's a formal arrest or, significantly, restraint on freedom of movement of the degree associated with a formal arrest, and then goes on to cite the language from Miranda. That was my reference. She wasn't free to leave, was she? No, she was not free to leave. And even if she was free to leave, she couldn't, as a practical matter, leave because she wasn't allowed back on the bus, or if the bus left, she would be stuck there in the desert. The language in Miranda talked about custodial interrogation, meaning questioning after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. Well, she's clearly deprived of her freedom of action in a very significant way, in that she can't leave until immigration that are holding her documents is satisfied as to her  So she's in custody. But even if she were not in custody, under the rule set out in Ortiz-Flores, she's at least at some sort of heightened level of seizure that triggers the requirement of Miranda warnings. So the court concluded correctly that the consent was not voluntary. Doesn't that go against the magistrate's findings? So wouldn't there be a de novo hearing required by the district court? No, Your Honor. As the court has said in Raddatz, there's not a right to a de novo hearing, only a right to a de novo determination. Now, the government has said, well, he really rejected the findings of the magistrate, even though, as the court pointed out in the order itself, it explicitly says the district court accepts the conclusions. And at the hearing, at the suppression hearing, there were significant differences between the government's agent and the defendant regarding what happened at the checkpoint. Obviously, the defendant denied that she gave any sort of consent, actual or coerced. But the district court accepted all that. What the district court did not accept was the legal conclusion that by saying yes, okay, that that constituted consent. Consent there is not for the magistrate to conclude as a legal matter, but for the district judge to decide. And it's certainly not for the agent to say consent was given, because that requires the legal conclusion that what Ms. Rodriguez said constituted consent. So the district judge is accepting what the magistrate found as to the statements, including the credibility of the agent in saying that Ms. Rodriguez said yes, okay, but concluded as a legal matter that did not constitute consent. I mean, it's not unlike if the warden is telling a condemned man, we're going to proceed with That's not consent to being executed. It's saying, I acknowledge what's going to happen. Let me ask you this. What if we were to conclude that the district court, despite the district court's statements in footnote 2, that in effect, he rejected the magistrate judge's credibility determinations? In fact, does it go back for just a new suppression hearing in front of the district court judge? Is that what happens? I assume so, Your Honor. I think the district court could review the record, and I believe the district court did review the record, both in terms of the transcript. When I read it, the district court judge said he was adopting the magistrate judge's findings of fact, and I just understood him coming to a different conclusion after his review of the record. Yes. And that's why I don't believe there is a right to a, or an Somebody else, I mean, the government thinks that that's not correct, and what the district court, in fact, did was to reject certain findings or credibility assessments. Yes. So I'm just trying to figure out what would, if we were to agree with the government, what would be the remedy? Does it mean that the district court procedurally erred and has to go back for a new hearing, or Well, I think the court, I mean, if the court were to do that, it would say there would still not be a need for a de novo hearing, evidentiary hearing. I think the court could be instructed to review the record. But that's what he did. He reviewed the record and came to a different conclusion. Yes. And I think that's obviously why I believe that there is no need for a de novo evidentiary hearing, is he can accept the facts. Let me ask you one other question before your time expires and you're almost out of time. Yes, Judge. Ortiz-Flores is what we call a memorandum disposition. It was not an opinion of the court. So it doesn't have as much, you know, it can be cited under the Federal Rules of Appellate procedure for its persuasive value, but it's not binding authority. So what do we do? Preciado Robles, I think, is a full-blown opinion of the court. So what do we do with that? Well, obviously, I believe that Ortiz-Flores is persuasive. And the fact that the facts are so similar to those here, and I would suggest in this factors of the threat of a taser and the other factors set out in. The threat of the taser didn't come until later. Well, it came before there was a, before any contraband was obtained. So it was part of the coercive actions by the agents to obtain or to enforce their demand for submission. That coupled with being. That was after the agent had felt something odd. Yes, Your Honor. That's true. Okay. I think your time is up. And I'll give you, if you want to just summarize your final point. Well, I would just say, being in custody, the taser issue, Miranda rights not being given and not being told that she had a right not to consent are all factors that weigh against voluntariness of the consent. Okay. Thank you, Your Honor. Thank you. The government has a minute for its rebuttal. Your Honor, I'll just address two quick things and then I'll sum up. The first was the question about the value of Ortiz-Flores in front of this court. And as the court noted, that was a memorandum opinion. And I think importantly, its persuasive authority is very little at this point. And the reason for that is that there were not specific facts found even in the memorandum opinion that would explain the court's analysis in that case and that would allow this court to analogize this specific circumstance with that. The facts that are recited in the district court order, as the government noted in its brief, were drawn entirely from the party's briefing in that case. Those were not facts found by the Ninth Circuit and on which — Well, we don't find facts anyway. Absolutely. But they weren't cited in the court's analysis in that case. So I think that really — But, you know, the problem with mem dispos is that when a panel elaborates in a memorandum, you know, the district court judges are looking for guidance. And if they see a mem dispo that is helpful or helps give them guidance on how to resolve a particular case, you know, they'll look to it, just as the parties do. And this particular judge thought it was very analogous and dug deep. There's no question about that. He obtained the briefs and he read the briefs and tried to figure out what was going on because the cases are, at least on the surface, have a very close factual background. And I think that — your last comment, Your Honor, is what's important is on the surface. But the fact is that it's a memorandum opinion that doesn't have a recitation of the facts that would allow the court to appropriately draw a legal analogy. Well, I'm not sure that, you know, that just because the district court judge relied on that case, that that ends the analysis. I mean, there are other cases that stand for the same principles that are in that Ortiz-Flores case. Well, there are other cases that also correctly state the voluntariness analysis as the court did in Ortiz-Flores, with more ample recitation of facts that would allow the court to draw appropriate analogies. I just want to conclude very quickly because I think that the court has focused today on what the government also feels is the most important thing in this case, in which the court in U.S. v. Toms noted, which is that in the business of judging, there is nothing more important than getting the facts right. And the factual findings by the magistrate in this judge were very, very clear. The magistrate found that the defendant consented to the search of her person. That is a factual finding. It found that Agent Salcedo's testimony regarding the events leading up to and including the search was more credible. And, Your Honors, I am actually quoting from the report and recommendation of the magistrate in this case. The court found that Agent Salcedo's testimony that she sought and obtained the defendant's consent prior to the search was credible, and the court found that there was no evidence that Defendant Rodriguez was threatened, coerced her will overborn. Moreover, the court found that Defendant Rodriguez did not revoke her consent at any time during her interactions with Agent Salcedo. Okay. We got that. We read that. Okay. And quickly, on the remedy, Your Honor, I think that there was a legal error here, as the government has noted, and the court can overturn that, apply the correct legal standard on the factual record that exists before it, and find this consent was voluntary. In the alternative, if the court is not inclined to do that, the appropriate remedy would be to overturn the district court's order on the motion to suppress and remand for a de novo hearing. Okay. Thank you.  The matter is submitted.
judges: Fernandez, Paez, Choe-Groves